**UNITED STATES DISTRICT COURT**

**DISTRICT OF MARYLAND**

| | |
|---|---|
| **CHAMBERS OF** | **101 WEST LOMBARD STREET** |
| **J. Mark Coulson** | **BALTIMORE, MARYLAND 21201** |
| **UNITED STATES MAGISTRATE JUDGE** | **P:(410) 962-4953 — F:(410) 962-2985** |

April 20, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:    *Shana M. v. Frank Bisignano, Social Security Administration*[1]
       Civil No. 1:25-cv-1766-JMC

Dear Counsel:

   Shana Moe ("Plaintiff") petitioned this Court on June 3, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for social security income ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 11, 16, 17). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

## I.      Procedural Background

   Presently before the Court is Plaintiff's fourth action for judicial review. Plaintiff first filed her Title II application for SSI on March 5, 2014, alleging disability as of January 1, 2013. (Tr. 62-70).[2] Plaintiff's claim was denied initially on July 3, 2014, and again upon reconsideration on August 11, 2014. *Id.* at 62-70, 93-94. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 95-97. ALJ O. Price Dodson conducted a video hearing on May 26, 2016. *Id.* at 19-35. ALJ O. Price Dodson subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame on October 11, 2016.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

*Id.* The Appeals Council affirmed the ALJ's decision on October 12, 2017. *Id.* at 1-6. Thereafter, Plaintiff filed an action for judicial review on December 7, 2017. *Id.* at 672-79. On October 16, 2018, this Court remanded the case to the Commissioner for further administrative proceedings. *Id.* at 668-671. Plaintiff presented for a second video hearing before ALJ Dodson on September 18, 2019. *Id.* at 606-624. On October 30, 2019, the ALJ rendered a second decision denying Plaintiff's claims for SSI. *See id.* Plaintiff filed a second action for judicial review, and this Court remanded Plaintiff's case for further proceedings on January 31, 2022. *Id.* at 936-948. Plaintiff presented for a telephonic hearing before ALJ Carol Matula on March 15, 2023. *Id.* at 870-897. On April 11, 2023, ALJ Matula rendered a decision denying Plaintiff's claims for SSI. *See id.* at 1296-1305. Thereafter, Plaintiff filed a third action for judicial review. On March 18, 2024, this Court remanded Plaintiff's case for further administrative proceedings. *See id.*

Then, on February 12, 2025, Plaintiff presented for a second telephonic hearing before ALJ Matula. *Id.* at 1197-1217. ALJ Matula rendered a decision denying Plaintiff's claims for SSI on April 2, 2025. *Id.* Having exhausted all administrative remedies, Plaintiff filed this fourth action for judicial review.

## II.    The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 5, 2014. (Tr. 1202). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "degenerative changes over the lumbar spine, cervical and thoracic disc herniation with degenerative changes at the C3-7, minimal

left shoulder AC joint degenerative joint disease, anxiety, depression, borderline personality disorder." *Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's step-three impairments, the ALJ opined:

> The claimant's musculoskeletal disorders were considered under listings 1.15 and 1.18. These listings are not met because there is no documented medical need for a two-handed assistive device, such as a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; there is no documented medical need for a one-handed assistive device combined with an inability to use the other upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements; and there is no evidence that the claimant is unable to use both upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movements (Exhibit 12F).

(Tr. 1203). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows from October 31, 2015, through December 31, 2018:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant could occasionally reach overhead with the nondominant arm. The claimant could frequently reach with the dominant arm. The claimant could frequently handle finger with the dominant hand due to an arm infection. She could occasionally perform postural movements. The claimant can perform simple, routine work. From January 1, 2019 to the present, the claimant residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can stand and walk four hours. The claimant can occasionally stoop and squat. The claimant can frequently finger; frequently reach and push and pull bilaterally. The claimant can perform simple, routine, repetitive tasks.

*Id.* at 1204. In pertinent part, the ALJ reasoned:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other

3

evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant can sit ten to fifteen minutes at one time; she can lift five to ten pounds. The claimant reported having difficulty lifting, squatting, bending, standing, reaching, walking, sitting, and kneeling. The claimant reported having pain that radiated from her neck to shoulders. Mentally, the claimant reported having poor memory, difficulty completing tasks, and maintaining concentration (Exhibits 5E; 6E; 9E; Hearing testimony).

Craig Moe, the claimant's husband, completed a third-party function report. Mr. Moe reported that the claimant had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and using her hands. The claimant had memory issues, completing tasks, and maintaining concentration (Hearing testimony). This statement is given little weight. As to the supportability, Mr. Moe is not a medical doctor. As to the consistency, the evidence shows that the claimant had some limitations due to back, neck, and shoulder pain as well as manipulative limitations from a hand injury. However, her impairments improved with treatment. She had intact strength, intact neurological findings, and intact sensation. Thus, the undersigned finds that the claimant is limited to a reduced range of light work, as detailed below.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.* at 1205. The ALJ went on to analyze several of Plaintiff's medical records. *Id.* at 1205-07. The ALJ further concluded that Plaintiff had no past relevant work. *Id.* at 1207. Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy:

For both periods and both residual functional capacities detailed above, the vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a checker, I, DOT 222.687-010, SVP 2, light, 30,000 jobs nationally; a routing clerk, DOT 222.587-038, SVP 2, light, 39,000 jobs nationally; paper pattern inspector, DOT 649.687-018, light, SVP 2, 47,000 jobs nationally; a button reclaimer, sedentary, SVP 2, DOT 734.687-042, 14,000 jobs nationally; a gauger, DOT 712.687-018, SVP 2, unskilled, 15,000 jobs national; an order clerk, 209.567-014, SVP 2, 12,000 jobs nationally;

If limited to occasional reaching in all directions and all the other limitations remained the following light and sedentary jobs could have been performed: a parlor chaperone, SVP 2, light, DOT 352.667-014, 25,000 jobs nationally; usher, DOT 344.677-014, light, SVP 2, 38,000 jobs nationally; a rental clerk, SVP 2, light, DOT 295.357-018, 36,000 jobs nationally; a call out operator, DOT 237.367-014.

*Id.* at 1208. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 5, 2014, the date the application was originally filed. *Id.*

### III. Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV. Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination on several grounds: (1) that the ALJ's residual functional capacity assessment failed to properly assess the intensity, persistence, and pace of Plaintiff's symptoms; and (2) that the ALJ erred by stating that Plaintiff's husband is not a medical doctor (ECF No. 11, 17). The Court finds the second argument dispositive on the basis that it falls squarely within this Court's precedent on the issue. For the reasons that follow, the ALJ's RFC determination is not supported by substantial evidence. As such, I will remand the case.

a. The ALJ Improperly Dismissed Plaintiff's Husbands Testimony under *Steven S.*, *Roila T.B.*, and *Paul P.*

Plaintiff argues the ALJ's analysis is deficient because the ALJ summarized the Plaintiff's and her husband's testimony before dismissing their statements in view of the objective medical evidence without explaining which portions the ALJ found inaccurate or how the supposed conflicts translate into concrete limitations. (ECF No. 11 at 13). Specifically, the ALJ stated,

Craig Moe, the claimant's husband, completed a third-party function report. Mr. Moe reported that the claimant had difficulty lifting, squatting, bending, standing,

reaching, walking, sitting, kneeling, and using her hands. The claimant had memory issues, completing tasks, and maintaining concentration (Hearing testimony). **This statement is given little weight. As to the supportability, Mr. Moe is not a medical doctor.** As to the consistency, the evidence shows that the claimant had some limitations due to back, neck, and shoulder pain as well as manipulative limitations from a hand injury. However, her impairments improved with treatment. She had intact strength, intact neurological findings, and intact sensation. Thus, the undersigned finds that the claimant is limited to a reduced range of light work, as detailed below.

(Tr. 1205) (emphasis added). In the entirety of the ALJ's RFC determination, this is the only statement about the supportability of Plaintiff's husband's testimony. An ALJ may evaluate "information or statement(s) from a nonmedical source (including [the claimant]) about any issue in [a] claim" as evidence. 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Moreover, "[o]pinions from ... nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). Accordingly, the SSA "consider[s] these opinions using the same factors" used to weigh medical source opinions in claims filed before March 27, 2017. 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). Indeed, "an opinion from ... a nonmedical source may outweigh the medical opinion of an acceptable medical source[.]" 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). Plaintiff also points to dispositive case law on this issue. *See Steven S. v. Kijakazi*, Civil No 22-3298-BAH, 2023 WL 6465291 (D. Md. Oct. 3, 2023); *Roita T.B. v. Berryhill*, No. TMD-18-33, 2019 WL 1316992, at *1 (D. Md. Mar. 22, 2019); *Paul P. v. Saul*, No. GLS-19-2793, 2021 WL 1134751, at *1 (D. Md. Mar. 24, 2021).

In *Roita T.B.*, the ALJ discounted two third-party function reports prepared by a claimant's friend and son because they were not "disinterested third party witness[es]." *Roita T.B.*, 2019 WL 1316992, at *5. The Court reversed and remanded the case because "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless [the ALJ] expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Id.* Critically, the Court noted "[a] lack of support from the overall medical evidence is ... not a proper basis for disregarding the observations of [lay] witnesses," because "third-party function reports may offer a different perspective than medical records alone," which makes them "valuable" in an ALJ's analysis. *Id.* (quoting *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)). In *Paul P.*, the Court was presented with the same issue. *Paul P.*, 2021 WL 1134751, at *1. There, a claimant's mother provided a third-party function report, and the ALJ discounted it for a lack of support from the medical evidence in the record. *Id.* at *5. There, the Court remanded the case for failure to "state with specificity the reasons for disregarding the written testimony in the function reports submitted by [the claimant's] mother." *Id.*

Most dispositive here, in *Steven S.*, the ALJ stated that a claimant's mother's testimony's "assessments [were] given little weight, because the claimant's mother is not an acceptable medical

source, and the evidence on file does not support the extent of her allegations." *Steven S.*, 2023 WL 6465291, at \*4.  There, the Court indicated that such reasoning "constituted error for several reasons."  First, "the ALJ erred by giving 'little weight' to the function report on the basis that the [claimant's] mother is 'not an acceptable medical source.'"  *Id.*  The Court recognized that "the ALJ's assignment of 'little weight' to this opinion on the ground that it was not prepared by 'an acceptable medical source' constituted error."  *Id.*  As such, the ALJ's reasoning here, which states that Plaintiff's husband's statement "is given little weight" because he "is not a doctor" constitutes error under *Steven S.*, *Paul P.*, and *Roita T.B.*  (Tr. 1205).   Here, the ALJ went on to cherry-pick evidence of improvement, when there existed much evidence of inconsistent pain and issues that could not be addressed by medication.  *Id.* at 1206-07. The Commissioner's arguments to the contrary are unavailing.  They do not point to any persuasive case law, and the ALJ failed to offer any further statement or analysis concerning Plaintiff's or her husband's testimony about her limitations.  To the contrary, the ALJ repeatedly stated that the "objective medical evidence" did not support their claims.  *See generally id.*

The *Steven S.* Court also indicated that the ALJ further erred "by discounting the testimony of Plaintiff's mother on the basis that 'the evidence on file does not support the extent of her allegations.'"  *Steven S.*, 2023 WL 6465291, at \*4.  To that end, the Court acknowledged that "[i]t is, of course, the ALJ's province to make credibility determinations and to resolve conflicts in the evidence."  *Id.* (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).  The Court reasoned, however, "a 'lack of support from the overall medical evidence is ... not a proper basis for disregarding' lay testimony, as such testimony offers a useful perspective on a claimant's abilities which differs from that which is gleanable through medical records."  *Id.* (quoting *Roita T.B.*, 2019 WL 1316992, at \*5).  Ultimately, the Court indicated the ALJ "should have either: (1) taken [claimant's] mother's testimony into account in crafting the RFC or (2) given 'reasons germane to; [claimant's] mother, rather than the remainder of the evidence, for discounting the testimony."  *Id.* (quoting *Roita T.B.*, 2019 WL 1316992, at \*5).  Finally, the Court found that the error was not harmless because the ALJ determined at step two that Plaintiff had only a 'mild limitation' in adapting and managing himself, but the mother testified that he could "only walk for about a mile before needing to rest…Accordingly, a proper evaluation of [the claimant's] mother's function report on remand may alter the ALJ's conclusions at step two as well as the RFC determination in this case."  *Id.*

Again, *Steven S.* controls.  The ALJ concluded that Plaintiff's husband's statement was inconsistent with objective medical evidence after finding a moderate limitation in adapting or managing herself at step two, and her husband stated that she "had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and using her hands" and struggled with "memory issues, completing tasks, and maintaining concentration."  (Tr. 1204, 1205).  These statements are incompatible with the RFC determination and lack an explanation as to why they were discounted on any basis other that the husband "is not a medical doctor."  *Id.* at 1205. As in *Steven S.*, *Paul P.*, and *Roita T.B.*, I will remand the case and direct the ALJ to evaluate testimony

or any third-party function reports in accordance with all relevant SSA regulations, and if the ALJ does not find the third-party statements persuasive, they must support such a decision with "reasons germane" to the report's author consistent with the precedent in this Court. *See Steven S.*, 2023 WL 6465291, at *4.

### V.    Conclusion

In sum, the Court agrees with Platiniff that the ALJ inadequately considered her husband's testimony.   In other words, the ALJ's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above.   Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED.   The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

8